PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* LUIS· HERNÁNDEZ, Defendant and Appellant.

No. 3895. Argued July 22, 1929.—Decided August 1, 1930.

*F. Gallardo Díaz* for appellant. *R. A. Gómez* for appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the Court.

Paragraph (*m*) of section five of "An Act to regulate the operation of motor vehicles in Puerto Rico, and for other purposes," as amended in 1925 (Session Laws, p. 758), reads as follows:

"Section 5.—(*m*) The Commissioner of the Interior may suspend or revoke the license of any person to act as a chauffeur or driver if, in his opinion, such person has been guilty of reckless or unskillful driving, has shown himself unmindful of the public safety or shown wanton disregard of the provisions of this Act, and he may

require the re-examination of any person licensed under this section or who may hold a license issued prior to the approval of this Act, if, in his opinion, circumstances warrant it; *Provided*, That persons whose licenses as chauffeurs or drivers shall have been suspended or revoked, upon notification from the Commissioner of the Interior shall deliver their badges and licenses to the person serving the Commissioner of the Interior's notice on them.''

Section 18 of the same law, after prescribing penalties for certain offenses when committed by the owners or drivers of heavy motor vehicles, provides that:

''. . . Violations of other provisions of this Act shall be deemed to be misdemeanors and shall be punished by a fine of not less than ten (10) nor more than three hundred (300) dollars, or by imprisonment for not less than ten (10) days nor more than three months.''

Luis Hernández was twice convicted, first in the municipal court, and later, after a trial *de novo,* in the district court, of a refusal to deliver his badge upon demand made in accordance with the provisions of paragraph (*m*) of section 5, *supra,* following the suspension of his license by the Commissioner of the Interior for a period of seven days. His first contention is that the district court erred in overruling a demurrer based upon the alleged unconstitutionality of paragraph (*m*).

Only two cases are cited in support of this contention. In one of them, *City of Shreveport* v. *Herndon,* 105 So. 244, the question involved was an attempted delegation of the legislative power. There is no such question in the instant case. In the *Shreveport* case, the Supreme Court of Louisiana, after stating the general rule that ''any statute or ordinance that purports to vest arbitrary discretion in a public officer, without prescribing a definite rule for his guidance, is unconstitutional,'' goes on to say:

'' . . . The rule is not without exception or modification, of course because some situations, and some statutes or ordinances, in the very nature of things require the vesting of discretion in a subordinate commission or in the officer charged with the duty of enforcing

the statute or ordinance; e. g., where it is impracticable to lay down a definite or comprehensive rule, or where the discretion relates to the enforcement of a police regulation requiring prompt exercise of judgment.''

The case was decided by a divided court. There is an interesting dissenting opinion.

*Barrett* v. *City of New York,* 183 Fed. 793, the other case relied upon by appellant, is somewhat more in point. There the circuit court said:

''It is further suggested that the section should be condemned because it leaves the question, who shall be licensed, to the arbitrary and unqualified discretion of the mayor, who may revoke any driver's license at his own will, without assigning any reasons for such action. Section 307. A similar objection was raised before this court in Engel v. O'Malley (opinion filed August 31, 1910) 182 Fed. 365. There a statute was criticised because it apparently confided the issuing of a license to the arbitrary discretion of the State Comptroller. Of this criticism it was said:

'' 'It is sufficient to say that the terms (of the statute) may be construed either way; that is, as giving such officer the power capriciously to refuse a license, or as giving him the power to refuse only in the honest exercise of a reasonable discretion. In the absence of a decision by the state court of last resort construing the language of the statute, it must be assumed that the latter is the correct interpretation, because otherwise the act would be unconstitutional, and it must be assumed that the Legislature intended to keep its enactments within the limits fixed by the Constitution.' ''

Obviously paragraph (*m*) of section 5, *supra,* is open to a like interpretation. The opinion of the Commissioner of the Interior as to the guilt of the offending chauffeur or driver involves ''the honest exercise of a reasonable discretion.'' The law does not say that a license may be suspended or revoked at the whim or caprice of the Commissioner of the Interior, but ''if in his opinion such person'' (the chauffeur or driver) ''has been guilty of reckless or unskillful driving, has shown himself unmindful of the public safety or shown wanton disregard of the provisions of this Act.''

In 42 C. J., at page 747, section 231, it is said that:

"In the absence of a provision for a hearing, in the statute authorizing a revocation or suspension of the license for a sufficient cause, the board or official having authority in the matter may act without giving the licensee a hearing before revoking or suspending his license; and since a chauffeur's or operator's license does not confer upon him any property rights, a statutory provision which authorizes the revocation or suspension of such a license without a hearing is not unconstitutional, as a deprivation of property without due process of law, . . ."

We do not deem it necessary to pursue the inquiry further. As pointed out in 6 R.C.L., at pages 102 and 103, section 102:

". . . the party who alleges the unconstitutionality of a statute normally has the burden of substantiating his claim, and must overcome the strong presumption in favor of its validity. It has been said that the party who wishes to pronounce a law unconstitutional takes on himself the burden of proving this conclusion beyond all doubt, and that a party who asserts that the legislature has usurped power or has violated the constitution must affirmatively and clearly establish his position."

It is not the province of courts to conjure up more or less doubtful theories upon which a statute may or may not be held to be unconstitutional.

Other contentions are that the district court erred in overruling a demurrer based upon a theory of former jeopardy, and in convicting defendant of the offense with which he was charged. Neither of these questions, as developed in the brief for appellant, demands serious consideration.

The judgment appealed from must be affirmed.

Mr. Justice Texidor took no part in the decision of this case.