92 So.2d 70 (1956)
231 La. 572
STATE of Louisiana
v.
Irvin B. MORROW.
No. 42767.
Supreme Court of Louisiana.
May 7, 1956.
On Rehearing December 10, 1956.
*71 Jack P. F. Gremillion, Atty. Gen., Michael E. Culligan, Asst. Atty. Gen., Leon D. Hubert, Jr., Dist. Atty., Peter J. Compagno, Asst. Dist. Atty., Dodd, Hirsch & Barker, Wilfred H. Boudreaux, Jr., New Orleans, for appellant.
Virgil M. Wheeler, Jr., New Orleans, for appellee.
PONDER, Justice.
The defendant, Irvin B. Morrow, who is engaged in the business of watch repairing in the City of New Orleans, was charged in a bill of information in that he did "wilfully and unlawfully engage in watch repairing for another for pay, without possessing a valid certificate of registration issued by the Board of Examiners in Watchmaking" and without displaying a certificate of registration. The defendant entered a plea of not guilty, demurred, and moved to quash the information on the ground that the statute under which he was charged was unconstitutional and more particularly Sections 1591 and 1599 of Title 37 of the LSA-Revised Statutes. His plea to the constitutionality of the statute is based on the ground that it violates Section 1 of the Fourteenth Amendment to the Federal Constitution and Article 1, Section 2; Article 3, Section 1; and Article 19, Section 14 of the Constitution of Louisiana-LSA. The lower court overruled the demurrer and the motion to quash, the defendant was tried, convicted and sentenced. On appeal, the Appellate Division, No. 1 of the Criminal District Court set aside the conviction and sentence and ordered the defendant discharged. Their judgment was based on the ground that the statute was unconstitutional, relying on the case of State ex rel. Whetsel v. Wood, 207 Okl. 193, 248 P.2d 612, 34 A.L.R.2d 1321. The State has appealed.
The State takes the position that the holding in the Wood case is erroneous and relies on the case of State of Wisconsin v. Richard B. Easton, unreported decision *72 of the Circuit Court of Rock County, Wisconsin, decided September 26, 1951. The State also relies on a number of decisions of this Court to support its contention that the legislature may regulate and limit the exercise of legitimate businesses, trades, and occupations when such regulation or limitation is, in the opinion of the legislature, necessary, convenient, or desirable to protect or further the general welfare and that the business of watchmaking is subject to such regulation.
For the purpose of this decision, we may concede that the legislature was authorized to regulate the business of watchmaking but what gives us most concern is whether the statute as constituted is an unlawful delegation of power and whether the delegation of power is so broad as to permit the creation of an unlawful monopoly.
The pertinent provisions of the statute granting the Board of Examiners in Watchmaking powers to regulate the watchmaking business are as follows:
LSA-R.S. 37:1589:
"The board shall administer the provisions of this Chapter; shall have an official seal; and make rules and regulations for conducting examinations, and define the standards of workmanship and skill.

"The board may promulgate rules and regulations to carry out the intent of this Chapter and establish suitable and proper uniform apprenticeship regulations; it may also appoint clerks and assistants necessary to the execution of board functions and fix their salaries; and retain legal counsel, horological or administration experts, if it finds it necessary."
LSA-R.S. 37:1591:
"No person shall engage in watchmaking for profit or compensation of any kind, unless he possesses a certificate of registration issued by the Board."
LRS-R.S. 37:1592:
"Applicants for certificates in watchmaking shall be of good character, at least nineteen years of age, and shall possess such general education, training and experience as the board may determine."
LSA-R.S. 37:1600:
"Any person not under sixteen years of age, of good character, apprenticed to a registered watchmaker, in accord with the regulations of the board, may pursue the trade of watchmaking upon obtaining from the board a certificate of registration as an apprenticed watchmaker, which certificate shall be conspicuously displayed at all times in the place of employment of the apprentice. Apprenticed watchmakers shall pay the certificate fee for apprentices and the annual renewal fee for apprentices provided by R.S. 37:1603." (Italics ours.)
The delegation of unlimited discretionary powers to the Board herein without fixing any standards or guideposts for the Board to carry out the legislative will is in effect a surrender of legislative power. A very pertinent statement with reference to the delegation of legislative powers is contained in the case of Noyes v. Erie & Wyoming Farmers Cooperative Corp., 170 Misc. 42, 10 N.Y.S.2d 114, 121, as follows:
"`The Legislature is free to choose among conflicting considerations, and mould the law according to its own will subject only to constitutional restrictions. It cannot delegate the same freedom of choice to an administrative officer. There it must erect guideposts which will enable the officer to carry out the will of the Legislature.' Seignious v. Rice, 273 N.Y. 44, 50, 6 N.E.2d 91, 93. See also Stanton v. Board of Supervisors of Essex County, 191 N.Y. 428, 432, 84 N.E. 380; Darweger v. Staats, 267 N.Y. 290, 305, 196 N.E. 61."
*73 While the Legislature, under adequate standards fixed by it for the execution of its legislative policy, might confer power of discretion upon administrative boards, it cannot surrender the legislative power itself. In the case of State v. Chisesi, 187 La. 675, 693, 175 So. 453, 459, in discussing this grant of legislative power, this Court stated:
"Adverting to the other reason why the statute in question constitutes a denial of the equal protection of the laws, we find the books full of decisions to the effect that a state statute or municipal ordinance which undertakes to regulate a lawful business or occupation by conferring upon a designated officer, or commission, or board, the authority, within his or its judgment or discretion, to grant or to withhold a license or permit to engage in the business or occupation, and which does not prescribe a rule or standard to which all persons similarly situated may conform, constitutes a denial of the equal protection of the laws. The leading case on the subject, of course, is Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220. The Louisiana cases maintaining the principle are: State v. Mahner, 1891, 43 La. Ann. 496, 9 So. 480; State v. Dubarry, 1892, 44 La.Ann. 1117, 11 So. 718; State v. Kuntz, 1895, 47 La.Ann. 106, 16 So. 651; City of New Orleans v. Palmisano, 1920, 146 La. 518, 83 So. 789; City of Shreveport v. Herndon, 1925, 159 La. 113, 105 So. 244; State v. Carter, 1925, 159 La. 121, 105 So. 247; State ex rel. Dickson v. Harrison, 1926, 161 La. 218, 108 So. 421, and Bultman Mortuary Service, Inc., v. City of New Orleans, 1932, 174 La. 360, 140 So. 503."
In the case of Bultman Mortuary Service v. City of New Orleans, supra, 174 La. 360, 365, 140 So. 503, 504, an ordinance was held unconstitutional "because the ordinance places it within the power of the council to grant or withhold permits, in the exercise of its administrative powers, according to its whim and fancy, thereby placing itself in position to display favoritism by granting its consent to one while refusing it to another under similar circumstances. [State of Washington ex rel.] Seattle [Title] Trust Co. v. Roberge, 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210; Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220; State ex rel. Dickson v. Harrison, 161 La. 218, 108 So. 421; State v. Carter, 159 La. 121, 105 So. 247."
In State ex rel. Dickson v. Harrison, supra [161 La. 218, 108 So. 422], the following was cited from State v. Carter, supra:
"`A statute or an ordinance which, instead of prescribing a uniform rule of action, undertakes to vest in a public officer or commission the authority to discriminate in favor of or against persons engaged in a legitimate business or occupation or enjoying a common right by granting or withholding a license or permit or approval, arbitrarily, or according to the officer's or commission's favoritism or whim, is violative of the equal protection clause of the Fourteenth Amendment." Citing authorities.
It was pointed out in Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 that the essentials of the legislative function are the determination of legislative policy and its formulation and promulgation as a defined and binding rule of conduct, and the essentials are preserved when Congress has specified the basic conditions of fact upon whose existence or occurrence, ascertained from relevant data by a designated administrative agency, it directs that its statutory command shall be effective.
This Court in the case of City of Alexandria v. Alexandria Fire Fighters Ass'n, Local No. 540, 220 La. 754, 57 So.2d 673, 674, set out the general principles in regard to *74 delegation of legislative authority as follows:
"It is an elementary principle of constitutional law that legislative power, conferred under constitutional provisions, cannot be delegated by the Legislature either to the people or to any other body or authority."
Citing State v. Watkins, 176 La. 837, 147 So. 8; Cooley's Constitutional Limitations, 8th Ed. Vol. 1, pp. 224, 238, 239, 240, 242, 244; 16 C.J.S., Constitutional Law, § 133, and 11 American Jurisprudence Section 214.
From a reading of these decisions, it is apparent that the statute involved herein is an unlawful delegation of legislative power to the Board of Examiners in Watchmaking; furthermore, it would permit said Board, if it so desired, to establish a monopoly.
For the reasons assigned, the judgment is affirmed.
HAMITER, J., concurs in the decree.
FOURNET, C. J., dissents, being of the opinion that the act is constitutional and therefore the trial judge should be affirmed.
HAWTHORNE, Justice (dissenting).
I do not think that the Legislature in the act which the majority of the court says is unconstitutional has surrendered legislative power or delegated unlimited discretionary powers to the Board of Examiners in Watchmaking without fixing any standards or guideposts for the board to carry out the legislative will. I concede that the act grants to the board some discretionary power, but a reading of the act shows that this grant is far from unlimited. In National Bank of Commerce in New Orleans v. Board of Supervisors, 206 La. 913, 20 So.2d 264, 270, this court quoted with approval from American Jurisprudence, as follows:
"`The modern tendency is to be more liberal in permitting grants of discretion to administrative bodies or officers in order to facilitate the administration of laws as the complexity of economic and governmental conditions increases.' 11 Am.Jur., Section 234, page 949.
"`The policy of the law favors the placing of detailed responsibility in administrative officers. The courts uphold statutes vesting such power in such officers if it is possible fairly to do so, at least where the powers are merely ministerial.' Ibid., Section 240, page 955."
I think that this pronouncement is pertinent here.
I dissent.

On Rehearing.
SIMON, Justice.
In our original opinion we considered the question whether certain sections of Act 473 of 1948, LSA-R.S. 37:1581-1610, constitute an unlawful delegation of legislative power to the Board of Examiners in Watchmaking, created thereby, as would permit said Board to create an unlawful monopoly. We directed our deliberation to the provisions of LSA-R.S. 37:1589, 1592 and 1600 and recognized that, subject only to constitutional restrictions, the Legislature in molding the law enjoys the freedom to choose from conflicting considerations; that with this freedom, however, it could not constitutionally delegate the same freedom of choice to a public officer, commission or board which would ultimately vest within his or its judgment or discretion the power to grant or withhold a license or permit to engage in this business or occupation, according to his or its whim or fancy, thereby resulting in a denial of the equal protection of laws. Noyes v. Erie & Wyoming Farmers Cooperative Corp., 170 Misc. 42, 10 N.Y.S.2d 114, 121; State v. Chisesi, 187 La. 675, 175 So. 453, and authorities therein cited; Yakus v. United *75 States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834; City of Alexandria v. Alexandria Fire Fighters Ass'n, Local No. 540, 220 La. 754, 57 So.2d 673, and authorities therein cited.
We further recognized that in the granting of or delegation of discretionary powers, certain standards or guideposts should be established and fixed by the Legislature, thus avoiding a surrender of its constitutional powers.
However, in our decree we did not specify the section of the Act deemed unconstitutional but used language that would indicate we considered the Act to be unconstitutional in its entirety.
We granted this rehearing upon application by the State seeking to have our original decree set aside and to have the Act in its entirety declared constitutional; and in the alternative, in view of the severability clause contained in said Act, to have us specifically declare the particular sections of this Act that we deem to be unconstitutional.
Upon reargument of the case, the State failed to advance any new or convincing argument to sustain its prayer for reversal of our original decree and for this Watchmaker's Act to be held constitutional in its entirety.
In reconsidering the provisions of LSA-R.S. 37:1589, 1592 and 1600 we are again convinced of the correctness of our original decree for the reasons therein advanced.
Further, we are sustained in our original position by the Legislature itself in its enactment of Act 259 of 1956 to correct the defects in the original Watchmaker's Act.
Act 259 of 1956 was enacted to re-enact LSA-R.S. 37:1581 to 1610, inclusive, by amending certain sections thereof relative to the licensing of watchmakers and apprentice watchmakers, the bonding of the Secretary of the Board of Examiners in Watchmaking, establishing standards and qualifications for watchmakers and apprentice watchmakers, and defining certain terms as used in this Act; by adding thereto a new section relative to the accrediting of schools for watchmakers; re-enacting the provisions of LSA-R.S. 37:1581 through 37:1600, as amended, and to repeal all laws or parts of laws in conflict therewith.
Section 2 of the amending Act amended LSA-R.S. 37:1589 so as to substitute the provision "and make rules and regulations for conducting examinations in conformity with the provisions of this Chapter" for the provision found in the original statute "and make rules and regulations for conducting examinations, and define the standards of workmanship and skill".
Thus it will be seen that the original statute delegated to the Board the freedom to define the standards of workmanship and skill in determining the person or persons to whom licenses should be granted. While, under the amending Act, the power of the Board to make rules and regulations for conducting examinations and for the issuance of licenses to the applicants or examinees or candidates therefor must conform with certain standards which have been explicitly spelled out therein.
In section 3 of the amending Act, LSA-R.S. 37:1592 is amended to read as follows:
"Applicants for certificates in watchmaking shall:
"(1) Be citizens of the United States of good moral character and at least 19 years of age.
"(2) Have successfully completed a course of 18 months study in an accredited school, combined with one year work experience under a licensed or registered watchmaker, or have successfully completed a genuine 4 year apprenticeship as an apprentice watchmaker during which time *76 the apprentice watchmaker must have been indentured to a registered or licensed watchmaker."
In section 4 of the amending Act, LSA-R.S. 37:1600 is amended to read as follows:
"Any person not under 16 years of age, a citizen of the United States, of good character, apprenticed to a registered watchmaker may pursue the trade of watchmaking as an apprentice watchmaker upon obtaining from the Board a certificate of registration as an apprentice watchmaker, which certificate shall be conspicuously displayed at all times in the place of employment of the apprentice. Apprentice watchmakers shall pay the certificate fee for apprentices and the annual renewal fee for apprentices provided by this Act.
"The board shall require for the issuance, maintenance and/or renewal of the certificate of registration of an apprentice watchmaker that the instruction and training of the apprentice watchmaker include the following but not necessarily in this sequence:
"(1) Cleaning, repairing and adjusting clocks (500 hours minimum).
"(2) Cleaning, repairing and adjusting watches (4200 hours minimum).
"(3) Polishing, turning, filing, grinding, fitting and making parts and general bench work (2000 hours minimum).
"(4) Care of stock, store service and errands (1000 hours minimum)."
A comparison of the pertinent sections of the original statute with the provisions of the amending statute, both being set forth verbatim in this opinion and in our original opinion, readily reveals the stark inadequacy of legislative will contained in the original statute.
Manifestly, by amending the original statute, the Legislature clear-sightedly acknowledged the unlawful delegation of legislative functions it had formerly conferred upon the Board of Examiners in Watchmaking. It thus proceeded to prescribe a uniform rule of action by the Board in the regulation of a legitimate business or occupation, affording rights common to all persons desirous of engaging in watchmaking, and spelled out standards, guideposts, limitations and restrictions so conspicuously lacking in the original Act as to clearly demonstrate the unconstitutionality of the original statute.
However, nothing in this opinion should be taken to indicate our views of the constitutionality or unconstitutionality of the Watchmaker's Act as amended, said issue not being before us for review.
We conclude that LSA-R.S. 37:1589, 37:1592 and 37:1600, upon which the prosecution herein was based, are hereby declared unconstitutional.
Accordingly, for the reasons assigned, the original decree of this Court is amended so as to read as follows:
It is ordered, adjudged and decreed that LSA-R.S. 37:1589, LSA-R.S. 37:1592 and LSA-R.S. 37:1600 be, and they are hereby declared unconstitutional, and the judgment of Appellate Division No. 1 of the Criminal District Court for the Parish of Orleans dismissing the defendant herein is affirmed.
HAMITER, J., concurs in the decree.